### 13859.  HICKS *v.* THE STATE.

There was a fatal variance between the indictment and the proof, as to the ownership of the money alleged to have been extorted by the officer, the indictment alleging that the money was extorted from and was the property of a named person, and the proof showing that although the money was paid in that person's behalf, it was paid by and was the property of another person, and, if extorted at all, was extorted from the latter.

DECIDED DECEMBER 12, 1922.

Indictment for extortion; from Fulton superior court — Judge Blair presiding.  July 8, 1922.

The court charged the jury that " if the indictment charges that the money was taken from J. R. Brantley and the evidence shows that, if extorted, it was extorted from P. B. Brantley, that would not be sufficient itself to authorize a conviction of the defendant; but the court is going to instruct you that if the money was put up by P. B. Brantley at the instance of J. R. Brantley and for his benefit, that would be sufficient, in so far as that element or feature of the case is concerned."  In the motion for a new trial it is alleged that this part of the charge was not a correct statement of the law, and was not authorized by evidence.

It was testified, that constables Davis and Williams arrested J. R. Brantley and another man and two young women who had been with them in an automobile which was standing at the side of the road, and took them before L. H. Hicks, a justice of the peace, who then " imposed a fine " on them of $25 each, and told them that if they " got the money up," the case would be dropped and they would not have to go to court; that one of the constables had previously told them that " he would try and put the case before Mr. Hicks and may be get [them] off for $25 apiece,' and told Brantley to leave the automobile there until he could get the money; that he left the automobile of his brother, P. B. Brantley, with Hicks, who locked it up, and he (J. R. Brantley) agreed to get up the money the next morning and give it to Hicks and get the car; and the next morning he told his brother about it and his brother went to see Hicks. P. B. Brantley testified: " I told Justice Hicks I wanted to settle the case, and he said it would cost me $50 to settle it for my brother, and $50 for the other boy, and he was making them pay the fines for the girls also. . . Finally he said that under the existing circumstances he would put it at $30, and I

could go get the car, and I asked Justice Hicks if that would absolutely end the case. He said it would. . . I went back to the office, got a check, went over and cashed it, and went up immediately and paid Justice Hicks $30. . . He said that would absolutely end the case entirely, . . and there would be no more of it. . . I got an expense check from the Harvester Company . . and went to the bank and cashed it, and went over there and paid $30 in money. . . My brother had told me he had to get up $50 to settle the case, . . so I immediately proceeded to get the funds up to pay it myself." "I went up there to settle the boy's case and get my car and stop publicity on account of my mother; I didn't want my mother to know that he had been arrested or anything of the kind. . . I left Judge Hick's place after I paid the $30, and went down to where the boy works and told him I had settled his case, and told him he had to make the money good to me," that "he had to get the money up."

Hicks, in his statement at the trial, contradicted the testimony as to a settlement, and said that the money received by him was put up by P. B. Brantley "as a collateral for the appearance of these boys at the trial."

*D. K. Johnston,* for plaintiff in error.

*John A. Boykin, solicitor-general, E. A. Stephens,* contra.

LUKE, J. The indictment, which was for extortion by a public officer (Penal Code of 1910, §§ 302-3), charged that the defendant extorted $30 in money from J. R. Brantley, and that this money was the property of J. R. Brantley, whereas the undisputed evidence showed that the $30, if extorted at all, was extorted from P. B. Brantley (brother of J. R. Brantley), and that it was the property of P. B. Brantley. This was a fatal variance between the indictment and the proof, and the court erred in overruling the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*